# EXHIBIT A

**Wolters Kluwer**

# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Mon, Mar 8, 2021

**Server Name:**        Kyle Bowers

| Entity Served | TIGI LINEA CORP. |
|---|---|
| Agent Name | C T CORPORATION SYSTEM |
| Case Number | 17-6809-442 |
| Jurisdiction | TX |





## CITATION –TRC 99 and 106

THE STATE OF TEXAS ·                                        COUNTY OF DENTON

### CAUSE NO. 17-6809-442

**TO: TIGI Linea Corp. - Registered Agent CT Corporation System Inc., 1999 Bryan St., Ste. 900, Dallas TX 75201; (or wherever he/she may be found)**

Notice to defendant: You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the first Monday following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may also be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

| | |
|---|---|
| Court: | 431st Judicial District Court<br>1450 E. McKinney, 4th Floor, Denton, TX 76209 |
| Cause No.: | 17-6809-442 |
| Date of Filing: | 08/18/2017 |
| Document: | Plaintiff's Original Petition, Jury Demand, and Request for Disclosure |
| Parties in Suit: | Xiao Dan Koshar; TIGI Linea Corp. |
| Clerk: | David Trantham, District Clerk<br>1450 E. McKinney, Suite 1200, Denton, TX 76209 |
| Party or<br>Party's Attorney: | Xiao Dan Koshar<br>PO Box 8143 Tumacacori AZ 85640 |

Issued under my hand and seal of this said court on this the 5th day of March, 2021.

David Trantham, District Clerk
Denton, Denton County, Texas

BY: _____*Kristi Kaviani*_____ , Deputy
Kristie Kaviani

---

### Service Return

Came to hand on the _____ day of _____, 20___, at _____m., and executed on the _____ day of _____, 20___, at _____ M by delivering to the within named _____ in person a true copy of this citation, with attached copy(ies) of the Plaintiff's Original Petition, Jury Demand, and Request for Disclosure, at _____.

Service Fee: $ _____

Service ID No. _____

_____ Sheriff/Constable
_____ County, Texas

_____
Deputy/Authorized Person

### VERIFICATION

On this day personally appeared _____ known to me to be the person whose name is subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument has been executed by me in this cause pursuant to the Texas Rules of Civil Procedure. I am over the age of eighteen years and I am not a party to or interested in the outcome of this suit, and have been authorized by the Denton County Courts to serve process.

Subscribed and sworn to before me on this the _____ day of _____, 20___

_____ Notary Public

FILED: 8/18/2017 4:08 PM
Denton County District Clerk
By: Velia Duong, Deputy

17-6809-442

NO._____

| | | |
|---|---|---|
| **XIAO DAN KOSHAR,** | § | |
| **Plaintiff,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **vs.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **TIGI LINEA CORP.,** | § | **DENTON COUNTY, TEXAS** |
| **_Defendant._** | § | |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Xiao Dan "Dannie" Koshar ("Ms. Koshar" or "Plaintiff") and files this, her Original Petition, Jury Demand and Request for Disclosure against Defendant TIGI Linea Corp. ("Unilever" or "Defendant") to redress certain grievances arising under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §§ 21.001 *et. seq*. In support thereof, Plaintiff respectfully states as follows:

### I. DISCOVERY CONTROL PLAN & CLAIM FOR RELIEF

1.  Plaintiff intends that this suit be governed by Discovery Control Level Two and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff requests injunctive relief and monetary relief over $100,000.

2.  Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000 and nonmonetary relief.

## II.  PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff, Xiao Dan Koshar, is an individual who resides in Arizona.

4.      Unilever is a Texas corporation that may be served with process by serving its registered agent for service of process, C T Corporation System, at its registered address, 1999 Bryan St. Ste. 900 Dallas, Texas 75201.

5.      This court has jurisdiction over this matter because it arises under the laws of the State of Texas. The amount in controversy exceeds the minimum jurisdictional limits of this Court.

6.      Venue is appropriate in this Court under Tex. Civ. Prac. & Rem. Code § 15.017 because actions giving rise to the suit took place in this county.

## III.  FACTUAL BACKGROUND

7.      Ms. Koshar began working for TIGI Linea Corporation on or about April 9, 2015.

8.      Throughout her employment, Ms. Koshar gave her best efforts to TIGI.

9.      Ms. Koshar was employed as a contract Demand Planner throughout her employment with TIGI.

10.     Ms. Koshar anticipated a long, successful career with TIGI.

11.     Unfortunately, TIGI discriminates against employees on the basis of race and national origin.

12.     Ms. Koshar's national origin is Chinese.

13.     Throughout the course of her employment, Ms. Koshar discovered that TIGI refuses to provide opportunities for advancement to Black and Chinese individuals because of their race and/or national origin.

14.     Ms. Koshar has heard TIGI employees, including TIGI's Customer Service Manager for

its Distribution Center, Rebecca Landrey, make derogatory comments about Black employees.

15. On or about July 10, 2015, Ms. Landrey stated, in reference to a Black former employee, "You don't know what kind of drugs you are going to find on these black people."

16. Ms. Koshar has also seen White employees favored over Black and Chinese employees.

17. By way of example, Crystal Roberson, a female, Black TIGI employee with more than ten years of experienced was relocated to her group in or around July 2015.

18. Ms. Koshar and her team had been working a few months on a product life cycle development project.

19. However, the team's supervisor at the time, Michelle Fussey, had Ms. Roberson teach Jessie Obrien, a White female employee with less experience, what the team developed in the Oracle system and how it worked.

20. Ms. Oberin had no part whatsoever earlier in this project and was completely new to the project.

21. Even though Ms. Oberin did not even have a beginner's level knowledge of this system, she was placed to oversee this database management system by Ms. Fussey.

22. Ms. Koshar has also been passed over for two promotions to permanent employment positions, despite her contributions to Unilever and her exceptional qualifications.

23. On or around July 24, 2015, Ms. Koshar applied for a permanent position with TIGI as a Supply Chain/Logistics Manager with TIGI's Director of Supply Chain, Manjula Kekulthotuwa.

24. When Ms. Koshar inquired about the position, Mr. Kekulthotuwa instructed her to e-mail Ms. Fussey regarding position but did not have her complete a formal application of any

kind.

25.     Mr. Kekulthotuwa instructed Ms. Fussey to set up an interview with her for the position.

26.     Ms. Koshar was interviewed for the position by Ms. Fussey, Ms. Landrey, and Jim Marcheschi, TIGI's Operations Manager.

27.     Mr. Marcheschi was very indignant towards Ms. Koshar during the entire interview.

28.     He wanted to disqualify her for this position based upon his opinion that Ms. Koshar did not have any "picking" experience, which refers to unloading boxes usin□a forklift.

29.     Ms. Fussey concentrated her interview questions towards her regarding certain types of problems and troublesome experiences occurring in the Lewisville TIGI Distribution Center.

30.     Ms. Fussey wanted to hear from Ms. Koshar what her proposed solutions were to these many different instances of Supply Chain matters.

31.     Ms. Koshar provided full, clear, and detailed answers to all her questions.

32.     Ms. Fussey seemed very pleased with her responses and told Ms. Koshar during the course of her questions that Ms. Koshar was doing a "very good job."

33.     Ms. Fussey also sent Ms. Koshar an email after the interview stating as much.

34.     During the course of this interview, Ms. Fussey was copying down on a notebook Ms. Koshar's solutions and remedy responses.

35.     Before the interview was conducted, while waiting ups□airs in Mr. Marcheschi's office, Ms. Koshar clearly overheard Mr. Marcheschi's wife talking to him over the phone about Adam Lapino and his status of employment for the position in question.

36.     After the interview, Ms. Koshar sent a thank you email to Mr. Kekulthotuwa, stating  that he "could rely on her to provide timely, accu□ate and unbiased reporting information" if

· Ms. Koshar were selected for the Supply Chain/ Logistics Manager position.

37. A few days later, Ms. Fussey, with an obvious display of sarcasm told her. "Oh, Ms. Koshar certainly provide timely, accurate and unbiased reporting information . . . in her position."

38. Ms. Koshar was shocked to hear that she used the same choice of words that Ms. Koshar had in her "Thank you" email to Mr. Kekulthotuwa.

39. Ms. Koshar later discovered that her application for this position was not handled per the company's existing job application protocol.

40. TIGI and its parent company, Unilever, use an outside recruiting firm to oversee job application status and schedule interview appointments.

41. From her understanding, there is no official record of her applying for the Supply Chain/Logistics Manager position.

42. Soon afterwards, her co-worker, Susan Grammar told her that she heard Mr. Marcheschi say that he, "[Does] not want any smart lady to work at Distribution Center. I already have her wife! That's plenty!"

43. Ms. Koshar was ultimately not selected for the Supply Chain/Logistics Manager position.

44. Adam Lapino, a White male who was clearly less qualified than her for the position, was selected.

45. Ms. Koshar has exceptional credentials in supply chain management.

46. In fact, Ms. Koshar has a degree in Supply Chain Management from one of the top supply chain management schools, Arizona State University.

47. Ms. Koshar was also a certified purchasing manager and am a member of the Institute for Supply Chain Management.

48.   In addition, Ms. Koshar has extensive experience in international business management.

49.   In or around mid-October 2015, Ms. Fussey informed her that she had no budget for her to be placed as a permanent employee or to continue working as a contract employee.

50.   Shortly after, Ms. Fussey, Gail Houston, and Ms. Koshar had a meeting.

51.   Ms. Houston wanted to confirm with Ms. Fussey that Ms. Koshar was no longer needed in Ms. Fussey's group so Ms. Houston could transfer her to her group as a contract employee.

52.   Ms. Fussey and Ms. Houston agreed that Ms. Koshar should transition to Ms. Houston's group on November 1, 2015.

53.   The next day after this meeting, Ms. Fussey told her. "You don't have to work with Gail. I'll understand."

54.   Ms. Fussey spoke in a low and hateful manner about Ms. Houston and gave her the distinct impression that Ms. Koshar would not like Ms. Houston because she is Black.

55.   Contrary to Ms. Fussey's claim, Ms. Koshar had just met Ms. Houston and thought she was a very nice person.

56.   In or around January 2016, Ms. Houston told her she had attended a group meeting with other department managers.

57.   They came to discuss the possible job promotion of Ms. Obrien to a managerial position.

58.   Ms. Houston informed her that this practice is TIGI protocol.

59.   Ms. Koshar was surprised to learn of discussions related to promoting Ms. Obrien, as she only has high school diploma.

60.   Ms. Houston further informed her that Ms. Fussey had told the other managers present that one of the major reasons Ms. Obrien deserved a managerial position is that she had

successfully undertaken and accomplished a long list of achievements.

61.     Ms. Fussey showed that list to the other managers.

62.     According to Ms. Houston, many of the managers told Ms. Fussey that they knew Ms. Obrien had not done any of what Ms. Fussey had claimed.

63.     For example, Ms. Fussey attributed several projects for which Ms. Koshar had been in charge and had completed to Ms. Obrien.

64.     According to Ms. Houston, Ms. Fussey then told the other managers that she "would not cooperate with them in the future when they wanted any of their people promoted."

65.     Ms. Houston also stated that Ms. Fussey threatened to refuse to vote in favor of the promotion of a member of Ms. Houston's team.

66.     Most of the managers present at that meeting knew Ms. Koshar, not Ms. Obrien, had successfully accomplished those needed tasks and duties for Michelle's group.

67.     In or around March 2016, Ms. Koshar applied for another permanent position as a Logistics Manager at TIGI.

68.     This time Ms. Koshar was instructed of the proper TIGI protocol to follow when applying for this position and followed that protocol.

69.     The interview was conducted with the Supply Chain Operations manager, Mr. Lapino.

70.     The interview process started in his office and concluded walking from his office and through the warehouse Distribution Center.

71.     When Mr. Lapino asked Ms. Koshar about some of her accomplishments at TIGI, Ms. Koshar informed him about her successfully completing the product life cycle data and Oracle master data project.

72.     Before Ms. Koshar could mention anything else, he told her, "Oh, I thought that was

---

PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND,
AND REQUEST FOR DISCLOSURE                                    Page 7 of 15

Jessie Obrien who did that?"

73.   Ms. Koshar was shocked to hear Mr. Lapino's statement□and was concerned that Ms. Fussey's attributing her accomplishments to Ms. Obrien would prevent her from advancing with TIGI.

74.   On the way through the warehouse Mr. Lapino told Ms. Koshar that he "really wanted to learn how to do this job," referencing his new position (for which Ms. Koshar had applied), and told her during the course of the interview that he thought Ms. Koshar was a good candidate for the Logistics Manager position.

75.   Mr. Lapino led her to believe that the he wanted to hire her as Logistics Manager so he could work with Ms. Koshar and so shecould help him learn his new position.

76.   A few days after her interview with Mr. Lapino, Ms. Koshar was walking through the office area to the ladies' room.

77.   Mr. Marcheschi was standing in entry of the bathroom hallway and confronted her before Ms. Koshar was able to pass him.

78.   He told her in an angry tone of voice, "We have to be fair to other people considered for this position."

79.   Ms. Koshar did not respond and was shocked by his behavior.

80.   Ms. Koshar had not spoken with him about the Logistics Manager position at any time.

81.   He also demanded in the same tone of voice that Ms. Koshar "stop following [him]."

82.   He was visibly angry.

83.   Ms. Koshar later noticed that the Logistics Manager position was reposted to TIGI's website.

84.   Ms. Koshar also heard from a coworker that Mr. Marcheschi has flirted with her and

would not stop, even though she indicated she did not want him to flirt with her.

85.   A few weeks afterwards, Mr. Lapino told Ms. Koshar that the reason she did not get the Logistics Manager position was that Ms. Koshar did not have enough warehouse experience.

86.   Mr. Lapino also said that he thought the warehouse was not "a good environment for [Ms. Koshar]."

87.   Ms. Koshar took this to mean that the warehouse would not be a good environment for her because she was female.

88.   Ms. Koshar was surprised to hear Mr. Lapino's explanaton, as the Logistics Manager position concerned international shipping and all the documentation requirements that go with it.

89.   TIGI's Lewisville Distribution Center is a go-through world-wide Distribution Center.

90.   In or around April 2016, Ms. Koshar expressed concern to Mr. Kekulthotuwa that Ms. Koshar had not been selected for the Logistics Manager position because of her race and sex.

91.   Ms. Koshar told Mr. Kekulthotuwa during Ms. Houston's group meting that she successfully completed all the assignments well ahead of schedule and that she proved that she did very good job for the things that TIGI wanted of her and that other people could not do.

92.   Ms. Koshar asked Mr. Kekulthotuwa to help her obtain a permanent management position.

93.   Mr. Kekulthotuwa was openly rude and verbally attacked her by accusing her of wanting her managers job, which was not true.

---

94.   Ms. Koshar pointed out that she was very well qualified for the open Logistics Manager position under Mr. Lapino and that the job was still open.

95.   Ms. Koshar asked Mr. Kekulthotuwa to reconsider her for the position, to which he responded, "Even you are qualified, I do not need to hire you."

96.   Mr. Kekulthotuwa assured her that he would see if she could be reconsidered for the Logistics Manager position, but ultimately she was not selected for the position.

97.   A coworker later told her that Mr. Kekulthotuwa held several managers' meetings in which he told the managers to watch out for her and instructed them to be careful.

98.   Ms. Koshar has seen other managers, including Ms. Landrey and Ms. Fussey, push Black employees out of their groups, including Sophia Brown, Shantell Evans, and Crystal Roberson.

99.   It is Ms. Koshar's understanding that in Mr. Marcheschi will only hire White, male managers for his group.

100.  Because Ms. Koshar was not selected for either promotion, her employment with TIGI ultimately came to end in in May 2016.

## IV.   CAUSES OF ACTION

### A. Sex Discrimination

101.  Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

102.  Defendant's actions as described herein constitute unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

103.  Plaintiff has satisfied all jurisdictional prerequisites in connection with Plaintiff's claims.

---

PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND,
AND REQUEST FOR DISCLOSURE                                   Page 10 of 15

104.  As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

105.  As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

106.  Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights.  Plaintiff therefore seeks punitive damages under 42 U.S.C. § 1981a.

107.  Defendant's actions referenced in the paragraphs above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her rights in this action. Consequently, Plaintiff seeks attorneys' fees, exprt costs, and other costs of suit under 42 U.S.C. § 2000e-5(k).

108.  Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

**B.  TCHRA National Origin Discrimination**

109.  Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

110.  Defendant's actions as described herein constitute unlawful national origin discrimination in violation of the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.051.

111.  Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Texas Labor Code.

112.   As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

113.   As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

114.   Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's state-protected rights.  Plaintiff therefore seeks punitive damages under the Texas Labor Code.

115.   Defendant's actions referenced in the paragraphs above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her state rights in this action. Consequently, Plaintiff seeks attorneys' fees, exprt costs, and other costs of suit under the Texas Labor Code.

116.   Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

## C.   Retaliation

117.   Plaintiff realleges and incorporates the allegations contained in the Paragraphs above as if fully stated herein.

118.   Defendant intentionally retaliated against Plaintiff in violation of Tex. Lab. Code §§ 21.001 et seq.

119.   As a result of the unlawful retaliatory actions of Defendant as described above, Plaintiff has suffered, and will continue to suffer, actual damages in the form of lost wages, medical and mental health costs, both past and future, and lost employment benefits, for

which she hereby sues.

120.   As a result of Defendant's unlawful retaliation, Plaintiff has suffered compensatory damages by reason of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

121.   At all times relevant to this action, Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, thus entitling her to punitive damages, for which she hereby sues.

122.   To redress the injuries sustained by Plaintiff on account of Defendant's retaliatory actions, Plaintiff has retained the undersigned counsel to represent her in this action. Plaintiff therefore seeks recovery of her reasoable attorneys' fees, experts' fees, and costs.

## V.  JURY DEMAND

123.   Plaintiff hereby makes a demand for a trial by jury on all issues, claims and defenses in this action.

## VI. REQUEST FOR DISCLOSURE

124.   Defendant is requested to disclose, within 50 days of service of this request, the information and material described in Texas Rule of Civil Procedure 194.2.

## VII.   **PRAYER**

125.   WHEREFORE, Plaintiff Ms. Koshar respectfully requests that the above-named Defendant, be cited to appear in this matter and that, after jury trial by proof, she be awarded:

     i.    Back pay, including but not limited to, lost wages (salary and commissions) and other employment benefits;

    ii.    Reinstatement to Plaintiff position of employment, equivalent position of employment, or the position of employment Plaintiff would have enjoyed but for the discrimination and retaliation;

   iii.    In the event that reinstatement is not feasible, front pay with respect to all pay and benefits Plaintiff would have received but for termination;

    iv.    Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

    v.    Actual damages;

    vi.    Punitive damages;

   vii.    Liquidated damages in the maximum amount allowed by law;

  viii.    Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit; and

    ix.    Prejudgment and post-judgment interest as allowed by law;

    x.    Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this court may deem proper.

Respectfully submitted,

Date:_____

_____

Xiao Dan "Dannie" Koshar, *Pro Se*
P.O. Box 8143
Tumacacori, Arizona 85640
xiao99win@yahoo.com

Respectfully submitted,

Date: 8/18/ 2017

X iao Dan Koshar

Xiao Dan "Dannie" Koshar, *Pro Se*
P.O. Box 8143
Tumacacori, Arizona 85640
xiao99win@yahoo.com

832-689-0652 (cell phone)

NO. 17-6809-442

|  |  |  |
|---|---|---|
| | § | |
| **XIAO DAN KOSHAR,** | § | |
| **Plaintiff,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **vs.** | § | _____ **JUDICIAL DISTRICT** |
| | § | |
| **TIGI LINEA CORP.,** | § | **DENTON COUNTY, TEXAS** |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Xiao Dan "Dannie" Koshar ("Ms. Koshar" or "Plaintiff") and files this, her Original Petition, Jury Demand and Request for Disclosure against Defendant TIGI Linea Corp. ("Unilever" or "Defendant") to redress certain grievances arising under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §§ 21.001 *et. seq.* In support thereof, Plaintiff respectfully states as follows:

### I. DISCOVERY CONTROL PLAN & CLAIM FOR RELIEF

1. Plaintiff intends that this suit be governed by Discovery Control Level Two and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff requests injunctive relief and monetary relief over $100,000.

2. Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000 and nonmonetary relief.

## II.  PARTIES, JURISDICTION, AND VENUE

3.    Plaintiff, Xiao Dan Koshar, is an individual who resides in Arizona.

4.    Unilever is a Texas corporation that may be served with process by serving its registered agent for service of process, C T Corporation System, at its registered address, 1999 Bryan St. Ste. 900 Dallas, Texas 75201.

5.    This court has jurisdiction over this matter because it arises under the laws of the State of Texas. The amount in controversy exceeds the minimum jurisdictional limits of this Court.

6.    Venue is appropriate in this Court under Tex. Civ. Prac. & Rem. Code § 15.017 because actions giving rise to the suit took place in this county.

## III.  FACTUAL BACKGROUND

7.    Ms. Koshar began working for TIGI Linea Corporation on or about April 9, 2015.

8.    Throughout her employment, Ms. Koshar gave her best efforts to TIGI.

9.    Ms. Koshar was employed as a contract Demand Planner throughout her employment with TIGI.

10.   Ms. Koshar anticipated a long, successful career with TIGI.

11.   Unfortunately, TIGI discriminates against employees on the basis of race and national origin.

12.   Ms. Koshar's national origin is Chinese.

13.   Throughout the course of her employment, Ms. Koshar discovered that TIGI refuses to provide opportunities for advancement to Black and Chinese individuals because of their race and/or national origin.

14.   Ms. Koshar has heard TIGI employees, including TIGI's Customer Service Manager for

---

its Distribution Center, Rebecca Landrey, make derogatory comments about Black employees.

15. On or about July 10, 2015, Ms. Landrey stated, in reference to a Black former employee, "You don't know what kind of drugs you are going to find on these black people."

16. Ms. Koshar has also seen White employees favored over Black and Chinese employees.

17. By way of example, Crystal Roberson, a female, Black TIGI employee with more than ten years of experienced was relocated to her group in or around July 2015.

18. Ms. Koshar and her team had been working a few months on a product life cycle development project.

19. However, the team's supervisor at the time, Michelle Fussey, had Ms. Roberson teach Jessie Obrien, a White female employee with less experience, what the team developed in the Oracle system and how it worked.

20. Ms. Oberin had no part whatsoever earlier in this project and was completely new to the project.

21. Even though Ms. Oberin did not even have a beginner's level knowledge of this system, she was placed to oversee this database management system by Ms. Fussey.

22. Ms. Koshar has also been passed over for two promotions to permanent employment positions, despite her contributions to Unilever and her exceptional qualifications.

23. On or around July 24, 2015, Ms. Koshar applied for a permanent position with TIGI as a Supply Chain/Logistics Manager with TIGI's Director of Supply Chain, Manjula Kekulthotuwa.

24. When Ms. Koshar inquired about the position, Mr. Kekulthotuwa instructed her to e-mail Ms. Fussey regarding position but did not have her complete a formal application of any

kind.

25. Mr. Kekulthotuwa instructed Ms. Fussey to set up an interview with her for the position.

26. Ms. Koshar was interviewed for the position by Ms. Fussey, Ms. Landrey, and Jim Marcheschi, TIGI's Operations Manager.

27. Mr. Marcheschi was very indignant towards Ms. Koshar during the entire interview.

28. He wanted to disqualify her for this position based upon his opinion that Ms. Koshar did not have any "picking" experience, which refers to unloading boxes using a forklift.

29. Ms. Fussey concentrated her interview questions towards her regarding certain types of problems and troublesome experiences occurring in the Lewisville TIGI Distribution Center.

30. Ms. Fussey wanted to hear from Ms. Koshar what her proposed solutions were to these many different instances of Supply Chain matters.

31. Ms. Koshar provided full, clear, and detailed answers to all her questions.

32. Ms. Fussey seemed very pleased with her responses and told Ms. Koshar during the course of her questions that Ms. Koshar was doing a "very good job."

33. Ms. Fussey also sent Ms. Koshar an email after the interview stating as much.

34. During the course of this interview, Ms. Fussey was copying down on a notebook Ms. Koshar's solutions and remedy responses.

35. Before the interview was conducted, while waiting upstairs in Mr. Marcheschi's office, Ms. Koshar clearly overheard Mr. Marcheschi's wife talking to him over the phone about Adam Lapino and his status of employment for the position in question.

36. After the interview, Ms. Koshar sent a thank you email to Mr. Kekulthotuwa, stating that he "could rely on her to provide timely, accurate and unbiased reporting information" if

Ms. Koshar were selected for the Supply Chain/ Logistics Manager position.

37.   A few days later, Ms. Fussey, with an obvious display of sarcasm told her. "Oh, Ms. Koshar certainly provide timely, accurate and unbiased reporting information . . . in her position."

38.   Ms. Koshar was shocked to hear that she used the same choice of words that Ms. Koshar had in her "Thank you" email to Mr. Kekulthotuwa.

39.   Ms. Koshar later discovered that her application for this position was not handled per the company's existing job application protocol.

40.   TIGI and its parent company, Unilever, use an outside recruiting firm to oversee job application status and schedule interview appointments.

41.   From her understanding, there is no official record of her applying for the Supply Chain/Logistics Manager position.

42.   Soon afterwards, her co-worker, Susan Grammar told her that she heard Mr. Marcheschi say that he, "[Does] not want any smart lady to work at Distribution Center. I already have her wife! That's plenty!"

43.   Ms. Koshar was ultimately not selected for the Supply Chain/Logistics Manager position.

44.   Adam Lapino, a White male who was clearly less qualified than her for the position, was selected.

45.   Ms. Koshar has exceptional credentials in supply chain management.

46.   In fact, Ms. Koshar has a degree in Supply Chain Management from one of the top supply chain management schools, Arizona State University.

47.   Ms. Koshar was also a certified purchasing manager and am a member of the Institute for Supply Chain Management.

48.   In addition, Ms. Koshar has extensive experience in international business management.

49.   In or around mid-October 2015, Ms. Fussey informed her that she had no budget for her to be placed as a permanent employee or to continue working as a contract employee.

50.   Shortly after, Ms. Fussey, Gail Houston, and Ms. Koshar had a meeting.

51.   Ms. Houston wanted to confirm with Ms. Fussey that Ms. Koshar was no longer needed in Ms. Fussey's group so Ms. Houston could transfer her to her group as a contract employee.

52.   Ms. Fussey and Ms. Houston agreed that Ms. Koshar should transition to Ms. Houston's group on November 1, 2015.

53.   The next day after this meeting, Ms. Fussey told her. "You don't have to work with Gail. I'll understand."

54.   Ms. Fussey spoke in a low and hateful manner about Ms. Houston and gave her the distinct impression that Ms. Koshar would not like Ms. Houston because she is Black.

55.   Contrary to Ms. Fussey's claim, Ms. Koshar had just met Ms. Houston and thought she was a very nice person.

56.   In or around January 2016, Ms. Houston told her she had attended a group meeting with other department managers.

57.   They came to discuss the possible job promotion of Ms. Obrien to a managerial position.

58.   Ms. Houston informed her that this practice is TIGI protocol.

59.   Ms. Koshar was surprised to learn of discussions related to promoting Ms. Obrien, as she only has high school diploma.

60.   Ms. Houston further informed her that Ms. Fussey had told the other managers present that one of the major reasons Ms. Obrien deserved a managerial position is that she had

successfully undertaken and accomplished a long list of achievements.

61.   Ms. Fussey showed that list to the other managers.

62.   According to Ms. Houston, many of the managers told Ms. Fussey that they knew Ms. Obrien had not done any of what Ms. Fussey had claimed.

63.   For example, Ms. Fussey attributed several projects for which Ms. Koshar had been in charge and had completed to Ms. Obrien.

64.   According to Ms. Houston, Ms. Fussey then told the other managers that she "would not cooperate with them in the future when they wanted any of their people promoted."

65.   Ms. Houston also stated that Ms. Fussey threatened to refuse to vote in favor of the promotion of a member of Ms. Houston's team.

66.   Most of the managers present at that meeting knew Ms. Koshar, not Ms. Obrien, had successfully accomplished those needed tasks and duties for Michelle's group.

67.   In or around March 2016, Ms. Koshar applied for another permanent position as a Logistics Manager at TIGI.

68.   This time Ms. Koshar was instructed of the proper TIGI protocol to follow when applying for this position and followed that protocol.

69.   The interview was conducted with the Supply Chain Operations manager, Mr. Lapino.

70.   The interview process started in his office and concluded walking from his office and through the warehouse Distribution Center.

71.   When Mr. Lapino asked Ms. Koshar about some of her accomplishments at TIGI, Ms. Koshar informed him about her successfully completing the product life cycle data and Oracle master data project.

72.   Before Ms. Koshar could mention anything else, he told her, "Oh, I thought that was

Jessie Obrien who did that?"

73.    Ms. Koshar was shocked to hear Mr. Lapino's statement and was concerned that Ms.
       Fussey's attributing her accomplishments to Ms. Obrien would prevent her from
       advancing with TIGI.

74.    On the way through the warehouse Mr. Lapino told Ms. Koshar that he "really wanted to
       learn how to do this job," referencing his new position (for which Ms. Koshar had
       applied), and told her during the course of the interview that he thought Ms. Koshar was a
       good candidate for the Logistics Manager position.

75.    Mr. Lapino led her to believe that the he wanted to hire her as Logistics Manager so he
       could work with Ms. Koshar and so shecould help him learn his new position.

76.    A few days after her interview with Mr. Lapino, Ms. Koshar was walking through the
       office area to the ladies' room.

77.    Mr. Marcheschi was standing in entry of the bathroom hallway and confronted her before
       Ms. Koshar was able to pass him.

78.    He told her in an angry tone of voice, "We have to be fair to other people considered for
       this position."

79.    Ms. Koshar did not respond and was shocked by his behavior.

80.    Ms. Koshar had not spoken with him about the Logistics Manager position at any time.

81.    He also demanded in the same tone of voice that Ms. Koshar "stop following [him]."

82.    He was visibly angry.

83.    Ms. Koshar later noticed that the Logistics Manager position was reposted to TIGI's
       website.

84.    Ms. Koshar also heard from a coworker that Mr. Marcheschi has flirted with her and

would not stop, even though she indicated she did not want him to flirt with her.

85.   A few weeks afterwards, Mr. Lapino told Ms. Koshar that the reason she did not get the Logistics Manager position was that Ms. Koshar did not have enough warehouse experience.

86.   Mr. Lapino also said that he thought the warehouse was not "a good environment for [Ms. Koshar]."

87.   Ms. Koshar took this to mean that the warehouse would not be a good environment for her because she was female.

88.   Ms. Koshar was surprised to hear Mr. Lapino's explanation, as the Logistics Manager position concerned international shipping and all the documentation requirements that go with it.

89.   TIGI's Lewisville Distribution Center is a go-through world-wide Distribution Center.

90.   In or around April 2016, Ms. Koshar expressed concern to Mr. Kekulthotuwa that Ms. Koshar had not been selected for the Logistics Manager position because of her race and sex.

91.   Ms. Koshar told Mr. Kekulthotuwa during Ms. Houston's group meeting that she successfully completed all the assignments well ahead of schedule and that she proved that she did very good job for the things that TIGI wanted of her and that other people could not do.

92.   Ms. Koshar asked Mr. Kekulthotuwa to help her obtain a permanent management position.

93.   Mr. Kekulthotuwa was openly rude and verbally attacked her by accusing her of wanting her managers job, which was not true.

94.   Ms. Koshar pointed out that she was very well qualified for the open Logistics Manager position under Mr. Lapino and that the job was still open.

95.   Ms. Koshar asked Mr. Kekulthotuwa to reconsider her for the position, to which he responded, "Even you are qualified, I do not need to hire you."

96.   Mr. Kekulthotuwa assured her that he would see if she could be reconsidered for the Logistics Manager position, but ultimately she was not selected for the position.

97.   A coworker later told her that Mr. Kekulthotuwa held several managers' meetings in which he told the managers to watch out for her and instructed them to be careful.

98.   Ms. Koshar has seen other managers, including Ms. Landrey and Ms. Fussey, push Black employees out of their groups, including Sophia Brown, Shantell Evans, and Crystal Roberson.

99.   It is Ms. Koshar's understanding that in Mr. Marcheschi will only hire White, male managers for his group.

100.  Because Ms. Koshar was not selected for either promotion, her employment with TIGI ultimately came to end in in May 2016.

## IV.  <u>CAUSES OF ACTION</u>

### A. Sex Discrimination

101.  Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

102.  Defendant's actions as described herein constitute unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

103.  Plaintiff has satisfied all jurisdictional prerequisites in connection with Plaintiff's claims.

PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND,
AND REQUEST FOR DISCLOSURE                                      Page 10 of 15

104. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

105. As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

106. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights. Plaintiff therefore seeks punitive damages under 42 U.S.C. § 1981a.

107. Defendant's actions referenced in the paragraphs above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 2000e-5(k).

108. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

**B. TCHRA National Origin Discrimination**

109. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

110. Defendant's actions as described herein constitute unlawful national origin discrimination in violation of the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.051.

111. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Texas Labor Code.

112.   As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

113.   As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

114.   Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's state-protected rights.   Plaintiff therefore seeks punitive damages under the Texas Labor Code.

115.   Defendant's actions referenced in the paragraphs above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her state rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under the Texas Labor Code.

116.   Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

## C.   Retaliation

117.   Plaintiff realleges and incorporates the allegations contained in the Paragraphs above as if fully stated herein.

118.   Defendant intentionally retaliated against Plaintiff in violation of Tex. Lab. Code §§ 21.001 et seq.

119.   As a result of the unlawful retaliatory actions of Defendant as described above, Plaintiff has suffered, and will continue to suffer, actual damages in the form of lost wages, medical and mental health costs, both past and future, and lost employment benefits, for

which she hereby sues.

120.   As a result of Defendant's unlawful retaliation, Plaintiff has suffered compensatory damages by reason of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which she hereby sues.

121.   At all times relevant to this action, Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, thus entitling her to punitive damages, for which she hereby sues.

122.   To redress the injuries sustained by Plaintiff on account of Defendant's retaliatory actions, Plaintiff has retained the undersigned counsel to represent her in this action. Plaintiff therefore seeks recovery of her reasonable attorneys' fees, experts' fees, and costs.

## V.  JURY DEMAND

123.   Plaintiff hereby makes a demand for a trial by jury on all issues, claims and defenses in this action.

## VI. REQUEST FOR DISCLOSURE

124.   Defendant is requested to disclose, within 50 days of service of this request, the information and material described in Texas Rule of Civil Procedure 194.2.

PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND,
AND REQUEST FOR DISCLOSURE                                               Page 13 of 15

## VII.  **PRAYER**

125.  WHEREFORE, Plaintiff Ms. Koshar respectfully requests that the above-named Defendant, be cited to appear in this matter and that, after jury trial by proof, she be awarded:

    i.    Back pay, including but not limited to, lost wages (salary and commissions) and other employment benefits;

    ii.    Reinstatement to Plaintiff position of employment, equivalent position of employment, or the position of employment Plaintiff would have enjoyed but for the discrimination and retaliation;

    iii.    In the event that reinstatement is not feasible, front pay with respect to all pay and benefits Plaintiff would have received but for termination;

    iv.    Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

    v.    Actual damages;

    vi.    Punitive damages;

    vii.    Liquidated damages in the maximum amount allowed by law;

    viii.    Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit; and

    ix.    Prejudgment and post-judgment interest as allowed by law;

    x.    Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this court may deem proper.

Respectfully submitted,

Date: _8/18/2017_

_Xiao Dan Koshar_

Xiao Dan "Dannie" Koshar, *Pro Se*
P.O. Box 8143
Tumacacori, Arizona 85640
xiao99win@yahoo.com

832-689-0652 (cell phone)

PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND,
AND REQUEST FOR DISCLOSURE                                  Page 15 of 15

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Xiao Dan Koshow

**DEFENDANTS**

TIGI LINEa Crp Denton

**(b)** County of Residence of First Listed Plaintiff _____

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product     Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &     Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander     Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability   ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine     Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product     Liability | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | Medical Malpractice | Leave Act | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment     **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other   ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☑ Yes   ☐ No

## VIII. RELATED CASE(S)
'IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE   3/4/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____